**DAL–TILE CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 90–11–00598.**

United States Court of International Trade.

July 28, 1993.

Brownstein Zeidman and Lore, Steven P. Kersner, Ronald M. Wisla, and Claudia G. Pasche, Washington, DC, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen. of U.S., Joseph I. Liebman, Attorney–in–Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, James A. Curley, Dept. of Justice, New York City, Edward N. Maurer, Office of Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, New York City, of counsel, for defendant.

OPINION AND JUDGMENT

CARMAN, Judge:

This case is before the Court on the parties' cross-motions for summary judgment after the United States Customs Service (Customs) denied plaintiff's protests over the imposition of supplemental countervailing duties on imports of ceramic tile from Mexico. Plaintiff claims Customs failed to liquidate the entries within the time allowed by 19 U.S.C. § 1504 (1988) and seeks to recover the supplemental countervailing duties paid on the entries. Defendant opposes the motion. This Court has jurisdiction under 28 U.S.C. § 1581(a) (1988).

## I. BACKGROUND

### A. *The Facts*

The countervailing duties at issue in this case arise out a final affirmative determination and countervailing duty order issued by the ITA on May 10, 1982. *See Ceramic Tile From Mexico*, 47 Fed.Reg. 20,012 (Dep't Comm.1982) (final affirm. determ.). This order directed Customs to suspend liquidation and collect cash deposits equal to 15.84% *ad valorem*, the amount of the subsidy found in the final determination. *Id.* at 20,015. Plaintiff posted cash deposits equal to 15.84% for entries made between May 10 and December 20, 1982. Pl's Mem at 2.

The ITA conducted a subsequent administrative review covering entries made between February 23 and December 31, 1982. *Ceramic Tile From Mexico*, 49 Fed.Reg. 9,919 (Dep't Comm.1984) (final admin. rev.). In this review, the ITA found net subsidies equal to 16.49% *ad valorem* and instructed Customs to liquidate the covered entries and assess countervailing duties equal to the net subsidy found. *Id.* at 9,921.

A Mexican exporter of ceramic tile later filed suit in the Court of International Trade (CIT) on March 22, 1984 to challenge the results of the 1982 administrative review. On March 24, 1984, the CIT issued a preliminary injunction suspending liquidation. On May 9, 1986, the Court issued an opinion upholding the ITA's determination and dissolving the injunction suspending liquidation. *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 636 F.Supp. 961 (1986).

On July 16, 1986, the CIT issued a new injunction suspending liquidation pending the outcome on appeal. On February 2, 1987, the Court of Appeals for the Federal Circuit affirmed the CIT's decision upholding the ITA's determination of countervailing duties of 16.49% *ad valorem*. *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137 (1987). On February 28, 1987, the CIT dissolved the injunction suspending liquidation.

Customs did not liquidate the entries covered by the 1982 administrative review until August 19 and August 26, 1988, approximately eighteen months after the appeal to the Federal Circuit became final.[1] At that time, Customs assessed supplemental countervailing duties of .65% *ad valorem* plus interest, an amount representing the difference between the duties found in the final determination and the administrative review (16.49% less 15.84%). Plaintiff's action challenges the assessment of these supplemental duties.

### B. *Statutory Provisions*

The statute at issue in this case is 19 U.S.C. § 1504, which provides for the following in relevant part:

**(a) Liquidation**

Except as provided in subsection (b) of this section, an entry of merchandise not liquidated within one year from:

(1) the date of entry of such merchandise;

. . . .

shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer of record. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

**(b) Extension**

The Secretary may extend the period in which to liquidate an entry by giving notice of such extension to the importer of record in such form and manner as the Secretary shall prescribe in regulations, if—

(1) information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officer;

(2) liquidation is suspended as required by statute or court order; or

(3) the importer of record requests such extension and shows good cause therefor.

**(c) Notice of suspension**

If the liquidation of any entry is suspended, the Secretary shall, by regulation,

---

1. The Department of Commerce did not send instructions to liquidate to Customs until June 28, 1988. Def's Mem at 2.

require that notice of such suspension be provided to the importer of record concerned and to any authorized agent and surety of such importer of record.

**(d) Limitation**

Any entry of merchandise not liquidated at the expiration of four years from the applicable date specified in subsection (a) of this section, shall be deemed liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record, unless liquidation continues to be suspended as required by statute or court order. When such suspension of liquidation is removed, the entry shall be liquidated within 90 days therefrom.

Customs Procedural Reform and Simplification Act of 1978, Pub.L. No. 95–410, 92 Stat. 888, as amended 19 U.S.C. § 1504 (1988).

## II. CONTENTIONS OF THE PARTIES

Plaintiff contends the subject entries should have been "deemed liquidated" at the rate at which they were entered, 15.84% *ad valorem*. Pl's Mem at 4. Plaintiff asserts that because Customs did not liquidate the entries within one year after the CIT dissolved the final injunction against liquidation and Customs did not receive an extension permitting a delay in liquidation, 19 U.S.C. § 1504(a) required Customs to treat the entries as "deemed liquidated" at 15.84% *ad valorem*. *Id.* at 6–7.

Plaintiff argues further that Congress intended to place a general one-year limit on the time available to Customs to liquidate entries absent specifically enumerated circumstances permitting an extension of time. *Id.* at 7–8. According to plaintiff, even though the ninety-day limit imposed by 19 U.S.C. § 1504(d) is directory rather than mandatory, the one-year limit imposed by 19 U.S.C. § 1504(a) is mandatory. *Id.* at 9. Plaintiff urges that Congress did not give Customs unbridled discretion in deciding when to liquidate entries after the dissolution of a court-ordered suspension of liquidation. *Id.* Therefore, plaintiff asserts that the nonrecognition of time limits would render § 1504's scheme meaningless. *Id.* at 9–12.

Defendant contends that § 1504(d) states the general rule governing unliquidated entries that are four years old and provides for an exception for court-ordered suspensions. Def's Mem at 3. According to defendant, § 1504(d) applies to the entries in this case because the entries occurred more than four years before the CIT terminated the final suspension. *Id.* Though defendant concedes Customs did not comply with the ninety-day requirement in § 1504(d), defendant nevertheless argues that the "deemed liquidated" provision in the first sentence does not apply to the subsection's second sentence because the second sentence does not contain such a provision, citing *Canadian Fur Trappers Corp. v. United States*, 12 CIT 612, 623, 691 F.Supp. 364, 367 (1988), *aff'd*, 884 F.2d 563 (1989). *Id.* at 4. The absence of a deemed liquidated penalty in the second sentence, defendant asserts, demonstrates that Congress did not intend to impose the penalty on entries whose liquidation was suspended for four years and which have not been liquidated within the ninety-day discretionary period established by § 1504(d). *Id.* at 10.

## III. DISCUSSION

This case is before the Court on the parties' cross-motions for summary judgment. Under the rules of this Court, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT R. 56(d). After reviewing all of the parties' submissions, the Court finds that there is no genuine issue of material fact. As a result, the Court will only address the remaining question of law.

■ The question of law presented is whether Customs failed to liquidate the subject entries within the time allowed by 19 U.S.C. § 1504(d) so as to trigger § 1504's deemed liquidation provisions. Because the issue in this case relates to Customs' construction of a statute it administers, Customs is entitled to substantial deference from this Court. *Allied–Signal Aerospace Co. v. United States*, 996 F.2d 1185, 1191 (Fed.Cir.1993)

(citing *Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)). For the reasons which follow, the Court concludes that Customs liquidated the entries within the time allotted by § 1504(d) and did not cause § 1504's deemed liquidation provisions to apply to the subject entries.

Previous decisions of this Court have clarified the meaning of § 1504's provisions. The most pertinent of these decisions is *Canadian Fur*, 12 CIT at 612, 691 F.Supp. at 364. As in the instant case, the liquidation in *Canadian Fur* was suspended by court order for more than four years after the importer entered the subject merchandise. *Id.* at 613, 691 F.Supp. at 366. Once the CIT dissolved the final suspension order, Customs waited approximately ten months before liquidating the entries. *Id.*, 691 F.Supp. at 366. Plaintiff contended that the ninety-day time limit imposed by § 1504(d) was mandatory and Customs' failure to abide by such limits caused plaintiff's entries to be deemed liquidated. *Id.* at 615, 691 F.Supp. at 367–68. The CIT rejected plaintiff's contentions and held that § 1504(d)'s ninety-day provision was directory rather than mandatory. *Id.* at 618, 691 F.Supp. at 369. In support of its holding, the Court relied on legislative history that specifically characterized the ninety-day provision as directory rather than mandatory. The Court reasoned further that the absence of a deemed liquidation consequence in the last sentence of § 1504(d) for failing to comply with the ninety-day limit also indicated that the time limit was merely directory. *Id.* at 616, 618, 691 F.Supp. at 367, 369.

The CIT recently relied on *Canadian Fur's* holding and rationale in *Eagle Cement Corp. v. United States*, 17 CIT ——, Slip Op. 93–117 1993 WL 235884 (June 23, 1993). *Eagle Cement* presented facts nearly identical to *Canadian Fur*. The *Eagle Cement* importer had made the subject entries more than four years before the court-ordered suspensions of liquidation terminated and Customs failed to liquidate within ninety days after the final suspension ended. *Id.* at ——, Slip Op. 93–117 at 2. Unlike the *Canadian Fur* liquidation which occurred approximate-

ly ten months after suspension terminated, however, liquidation in *Eagle Cement* took place twenty-one months after suspension terminated. *Id.* at ——, Slip Op. 93–117 at 2. Despite the fact that the delay in *Eagle Cement* exceeded the delay at issue in *Canadian Fur* by eleven months, the Court declined to fix an outside limit on how long Customs might take before liquidating entries that are more than four years old when suspension of liquidation terminates. Instead, the Court adhered to *Canadian Fur's* holding that § 1504(d)'s ninety-day limit on liquidation for entries that are more than four years old when suspension of liquidation terminates was directory rather than mandatory. *Id.* at —— – ——, Slip Op. 93–117 at 4–5.

In reaching its conclusion, the *Eagle Cement* court also rejected plaintiff's suggestion to read § 1504(a) and § 1504(d) in *pari materia*. *Id.* at ——, Slip Op. 93–117 at 5. This principle of statutory construction provides that legislative intent "is to be deduced from the whole statute and every material part of the same." RUTH F. STURM, CUSTOMS LAW AND ADMINISTRATION, § 51.6, at 57 (3d ed. 1991). The plaintiff in *Eagle Cement*, relying on § 1504(a), sought to apply the consequence of deemed liquidation to entries not liquidated within one year after the termination of a court-ordered suspension. 17 CIT at ——, Slip Op. 93–117 at 5. The Court reasoned that "[t]he one year time limit in § 1504(a) does not apply to § 1504(d) as, by the plain language of § 1504(a), court-ordered or legislative suspensions are excluded from its mandate." *Id.* at —— – ——, Slip Op. 93–117 at 5–6. The Court also reasoned that because "Customs . . . provided an explanation as to its difficulties in completing the liquidations . . . [and] plaintiff [did] not [make] out a case of unusual prejudice caused by the delay," Customs actions did not "rise to the level of abuse of discretion" that would permit a remedy for the delay. *Id.* at —— – ——, Slip Op. 93–117 at 6–7.

The instant case falls squarely within the holdings of *Eagle Cement* and *Canadian Fur*. As in *Canadian Fur* and *Eagle Cement*, liquidation in this case did not occur

within four years from the date of entry due to a court-ordered suspension. Similarly, due to the court-ordered suspension in this case, the merchandise fell within the "exception" contained in § 1504(d) on the fourth anniversary date of its entry.[2] As a result, the consequence of deemed liquidation did not attach to the subject merchandise and Customs had ninety days to liquidate after the CIT dissolved the injunction against liquidation on February 28, 1987. Yet, under the holdings of *Canadian Fur* and *Eagle Cement*, Customs was not *required* to liquidated the merchandise in this case within ninety days from February 28, 1987. *See Canadian Fur*, 12 CIT at 616–17, 691 F.Supp. at 368 (discussing the discretionary meaning of § 1504(d)'s ninety-day rule); *Eagle Cement*, 17 CIT at ——, Slip Op. 93–117 at 5 (describing Congress' intent "to grant Customs discretion as to when to liquidate" under § 1504(d)'s final sentence).

■ Plaintiff asserts, however, that Congress intended to create a general one year limit on delays in liquidation. In essence, plaintiff advances the same argument rejected in *Eagle Cement*. Plaintiff urges the Court to read § 1504(a) and § 1504(d) in *pari materia* so as to apply the consequence of deemed liquidation to entries not liquidated within one year after the termination of a court-ordered suspension. *Id.* at ——, Slip Op. 93–117 at 5. This Court does not find plaintiff's argument persuasive.

This Court declines to adopt plaintiff's suggestion in this case because the plain language of § 1504(d) and the legislative history of § 1504 do not indicate that Congress intended to apply a one-year limit on liquidation to entries falling within § 1504(d)'s exception.[3] Section 1504(d) provides as follows:

**2.** The exception appears in the last clause of § 1504(d)'s first sentence:

Any entry of merchandise not liquidated at the expiration of four years from the applicable date specified in subsection (a) of this section, shall be deemed liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record, *unless liquidation continues to be suspended as required by statute or court order.*

Any entry of merchandise not liquidated at the expiration of four years from the applicable date specified in subsection (a) of this section, shall be deemed liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record, unless liquidation continues to be suspended as required by statute or court order. *When such suspension of liquidation is removed, the entry shall be liquidated within 90 days therefrom.*

19 U.S.C. § 1504(d) (emphasis added). As indicated in *Canadian Fur* and *Eagle Cement*, the legislative history commenting on § 1504(d)'s last sentence clearly states that the sentence's direction is "discretionary, rather than mandatory." H.R.Rep. No. 621, 95th Cong., 1st Sess. 26 (1977); *see also Canadian Fur*, 12 CIT at 616, 691 F.Supp. at 368; *Eagle Cement*, 17 CIT at ——, Slip Op. 93–117 at 5. Because Congress chose to characterize its direction in § 1504(d) as "discretionary" and not to include *any* other words of limitation with respect to entries falling under § 1504(d)'s exception, it appears that Congress did not intend to apply *any* limit to entries falling under § 1504(d)'s exception. *Cf. Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."). As a result, the Court reaches the following conclusions: (1) § 1504(a)'s one-year limit does not apply to entries falling within § 1504(d)'s exception; (2) Customs' eighteen-month delay in liquidating plaintiff's merchandise was within the time allowed by § 1504(d); and (3) Customs' delay did not trigger § 1504's deemed liquidation provisions.

19 U.S.C. § 1504(d) (emphasis added).

**3.** In addition, to the extent § 1504(a) references the court-ordered and legislative suspensions that permit extensions of the liquidation period, as provided in § 1504(b), the Court finds that § 1504(a)'s plain language also precludes plaintiff's interpretation. *See id.* at ——, Slip Op. 93–117 at 5.

Notwithstanding the result reached, the Court observes that the absence of any time limit on the liquidation of merchandise that satisfies § 1504(d)'s exception appears to conflict with the goals Congress purportedly sought to achieve in 1978 by amending § 1504. Prior to the 1978 amendments, Congress did not impose any time limits on Customs for liquidating entries made into the United States customs territory. *See, e.g., Dart Export Corp. v. United States*, 43 CCPA 64, 75, C.A.D. 610, 1956 WL 8339 ("At the present time, under the Tariff Act of 1930, there is still no provision in the statute setting forth a time limit for the collector to make his liquidation."); *Peugeot Motors of Am., Inc. v. United States*, 8 CIT 167, 171, 595 F.Supp. 1154, 1157 (1984) ("Congress had not prescribed a time period within which to liquidate entries prior to this provision [19 U.S.C. § 1504, as amended in 1978]."); *United States v. De Rivera*, 73 F. 679, 680 (C.C.S.D.N.Y.1896) (indicating that liquidation may occur at any time after importation). In response to Customs' past practice and concerns voiced during multilateral trade negotiations (MTNs), Congress amended § 1504 in order to limit the time in which Customs could liquidate entries. *See* S.Rep. No. 778, 95th Cong., 2d Sess. 32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2211, 2243 (indicating that § 1504's limitations stem from requests received during MTNs). The primary purpose of the amendments was to "increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction." *Id.* Despite this purpose, as interpreted in this case, *Eagle Cement*, and *Canadian Fur*, the plain language of § 1504(d)'s exception effectively permits Customs to delay liquidation indefinitely. The potential for such delays unquestionably fosters the same uncertainties that Congress sought to eradicate with the 1978 amendments.

Moreover, Congress' reasons for adopting a discretionary time limit in § 1504(d) do not appear to correspond to the liquidation delays that have reached the courts. As indicated in § 1504's legislative history, Congress chose a discretionary time limit in recognition of the fact that "there will be in-stances when it may be impossible to complete liquidation within 90 days because of the sheer number of entries to be liquidated after a long-continued suspension." H.R.Rep. No. 621, 95th Cong., 1st Sess. 26 (1977). In contrast to the rationale underlying the discretionary time limit, none of the litigated liquidation delays under § 1504(d) appears to have resulted from an inability to liquidate promptly a large number of entries. For example, the delay in *Canadian Fur* was due to a decision by the Department of Commerce to wait nearly eight months before directing Customs to liquidate the subject entries. 12 CIT at 613, 617, 691 F.Supp. at 365–66, 368. The Court in *Eagle Cement* indicated that the delay arose from difficulties Customs had in liquidating the subject entries, but did not explain what those difficulties were. 17 CIT at ——, ——, Slip Op. 93–117 at 2, 6. Nevertheless, because the case only involved twenty-two entries, it is clear that the delay was not due to a large number of entries. *See id.* at ——, Slip Op. 93–117 at 2. The delay in the instant case is attributable to the Department of Commerce's failure to direct Customs to liquidate the subject entries until June 28, 1988, sixteen months after the removal of the last court order suspending liquidation. Def's Mem at 1. In each of the foregoing cases, a lack of administrative diligence rather than overwhelming numbers of entries appears to have prompted the liquidation delays. As the Court in *Canadian Fur* noted, "it is troublesome that this provision, which was intended to afford latitude to Customs in complicated liquidations, has the potential for abuse when Commerce invokes its protection to justify the agency's own lack of diligence." 12 CIT at 617, 691 F.Supp. at 368.

It is equally problematic that § 1504(d) gives Customs unlimited discretion merely because suspensions of liquidation have continued until after the fourth anniversary of the date of entry. Under present law, if the suspensions were to terminate one day before the fourth anniversary date, Customs would have only one day in which to liquidate the merchandise and thereby avoid the application of the deemed liquidation rule in § 1504(d). *See Nunn Bush Shoe Co. v.*

*United States,* 16 CIT ——, ——, 784 F.Supp. 892, 894 (1992). Similarly, under § 1504(a)'s provisions, if the suspension of liquidation were to terminate one day before the first anniversary date of entry, Customs would have only one day to liquidate the merchandise to avoid the consequences of the deemed liquidation rule in § 1504(a). *See Pagoda Trading Co. v. United States,* 9 CIT 407, 410–11, 617 F.Supp. 96, 98–100 (1985), *aff'd,* 804 F.2d 665 (1986). Given these provisions, it is unclear why certainty and finality become less important the longer an importer waits for a suspension of liquidation to terminate as is the case with merchandise falling under § 1504(d)'s exception. In addition, because large numbers of entries may be involved in liquidations covered by § 1504(a) and the first two clauses of § 1504(d), Congress' rationale for adopting discretionary time limits only for entries meeting § 1504(d)'s exception appears questionable.

A strong argument could be made that § 1504(d) produces an unreasonable result "plainly at variance with the policy of the legislation" so as to permit the Court to adhere to the legislation's purpose rather than its literal words. *United States v. American Trucking Ass'ns,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940); *see also Perry v. Commerce Loan Co.,* 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827 (1966). As a result, one could assert that § 1504's purpose was to establish precise guidelines for the prompt liquidation of all entries and the absence of *any* deadline for entries meeting § 1504(d)'s exception vitiates this purpose. Therefore, the general one year limit imposed by § 1504(a) would appear to be the appropriate outside boundary for timely liquidations.

Notwithstanding the merits of such an argument, this Court must adhere to § 1504's plain meaning and the cases which have interpreted the statute. *Cf. Suramerica de Aleaciones Laminadas, C.A. v. United States,* 966 F.2d 660, 668 (Fed.Cir.1992) (This Court is "bound not by what [it] think[s] Congress should or perhaps wanted to do, but by what Congress in fact did."). Nevertheless, it would seem appropriate for Congress to reconsider how it can promote certainty in the customs process while also providing Customs sufficient latitude for handling large numbers of entries. Perhaps, Congress should adopt a rule that would require Customs to liquidate all merchandise within one year from the date of entry or within one year from the date upon which suspension of liquidation ends, whichever is later.

## IV. CONCLUSION

The Court makes the following holdings: (1) § 1504(a)'s one-year limit does not apply to entries falling within § 1504(d)'s exception; (2) Customs' liquidation eighteen months after the date the CIT dissolved the final suspension of liquidation was within the time allowed by § 1504(d); and (3) Customs' delay did not trigger § 1504's deemed liquidation provisions. The Court grants defendant's motion for summary judgment. Plaintiff's motion for summary judgment is denied.

